Mr. Keene, you're up, sir. Good morning, Your Honor. May it please the Court, my name is Chauvin Keene, I'm with Keene Miller. We're in New Orleans and I represent the appellants Memphis Bridge, Atlanta Bridge, and Trailer Bridge. I may refer collectively to the barges as the barges throughout this argument, and so if you have any questions as to which specific entity I'm referring to, I invite the Court to clarification. Six separate issues are raised on appeal, each of which constitutes reversible error to which the appellants seek a reversal of the district court's judgment. But I will focus on three specific issues in my arguments. The first beginning with notice. Lim had actual or should have had notice of the no lien provision in Trailer Bridge's Work Cat Charter Agreement. Second, Lim did not furnish necessaries on the order of an authorized party to the barges. Third, the district court failed to render a judgment that was sufficient on the record as to the scope of the claim of lien that was at issue in this case. Specifically, the district court erred when it found that it didn't have sufficient evidence to make a ruling as to damages, the amount of the claim of lien. And it is admitted by the judge in her opinion when it specifically provides the reasonings that it went with the day rate rather than the value of the claim of lien. Turning to my first point, Your Honor, necessaries are strict digeris. And the Federal Maritime Lien Act specifically provides that a maritime lien may be provided if it provides necessaries to a vessel on the order of the owner or a person authorized by the owner to incur such liens. Neither of those are present here, Your Honor, because first, Lim lacked authority to bind the vessels. And by vessels, I mean the barges themselves. WorkCat was not the owner, and Lim knew that. Second, WorkCat was also not permitted to incur any liens on these barges. Specifically, the Trailer Bridge WorkCat Charter Agreement contained a standard no lien clause, which was almost as merely contained in the WorkCat Lim Charter Agreements. Specifically, turning to the charter agreement, on December 20, 2020, Lim received an email from WorkCat's CEO and president, both of which testified, both the sender of the email and the recipient of the email testified during trial. Specifically, the email contained a copy of WorkCat and Trailer Bridge's charter agreement. Again, that contained the no lien clause. And it was sent to Lim's manager, who specifically was in charge of negotiating and managing its charter agreements with Lim. Your Honor. Hadn't they reached an agreement before December 20th? Your Honor, specifically, there was a charter agreement between Lim and WorkCat. There was no charter agreement or privity of contract between the barges and Lim itself. And in fact, the claim of lien in this case is specific to January 16, 2021 through June 2021. That's the issues that are specifically presented here in this lawsuit. And so, yes, Your Honor. So it's not, not a, so the question about notice being given before the performance, it is a red herring insofar as it concerns the actual operation of the vessels. Yes, Your Honor. Yes, Your Honor. I believe that is a specific red herring because if we are, because if we're looking to what the, what Lim provided a alleged function to these barges, they're claiming that they have a lien specific from this time period to this time period. But then they're also admitting that they had, that they received notice of the WorkCat charter agreement almost a month before that. If we're going to impute every time that there's a connection or any type of connectivity with a company in its historical dealings to someone to impose a liability on them, then we will have no maritime liens that will be sufficient. For example, if we have a regular bunker provider that has a consistent dealing with a ship that comes into port every 60 days and they provide lien, doesn't mean that that notice provision is imputed for perpetuity. It's simply saying that I had notice for this specific transaction, this discrete lien, and that's it. But if I have the continuing notice before I incur another lien and the scope of my lien is limited in time to the specific January 16th, 2021 claim as included in their complaint, then I of course have notice of the no lien provision in the charter that I received in December of 2020. And Your Honor, specific. What do you do with the language in one of our cases that seems to imply a contemporaneous knowledge of the no lien provision so that negotiations can encompass that? Your Honor, I- Isn't that language is in one of our cases? Your Honor, I didn't see the specific language that you're referencing as to be binding or holding on the parties as it relates to notice at the instance being a prohibition on past and future claims. It's specific that in this specific case, they had actual notice of the claim of the no lien provision and then they are alleging that they were not paid for alleged towage voyages that came after that notice. And so, Your Honor, specifically, we have a two-pronged notice here. Not only do we have actual claimed notice admission by the representative from LIM that testified during trial, he says, I received it, I just didn't read the whole thing. I don't know if I've ever seen a court that has agreed with that position that purposeful ignorance of a contract or portions thereof is an excuse for not being bound by the terms of that contract. Specifically, we see it in terms of arbitration provisions on a regular basis when we have to deal with things like that. I mean, you see it in the Carnival Cruise Line cases when a person has the billet. On the back of that, it has the terms and conditions and it provides that you must arbitrate your claims against the cruise lines. But then it goes, we have an even better argument, Your Honor. Specifically, we have the Cardinal Shipping case where this court's binding precedent, controlling precedent here, specifically states that in 1971, the Federal Maritime Lien Act was amended to provide an exception to the notice diligence requirement for material men. LIM is not a material man. LIM did not provide a good to the vessels such that we think of a shoreside operator that's providing, for example, bunkers or bolts or repair equipment and things. And we've cited various definitions from various sources that define what a material man is considered. I could not find a specific case from this jurisdiction that specifically held a finite definition of material man. But again, we look to the treatises and the Black's Law Dictionary definition, and we certainly find that there's no evidence on the record to support that they provided a good to these vessels. They are not a material man. And because of that, Cardinal Shipping tells us that the 1971 amendments did not do away with the notice diligence requirements. Specifically, the panel of this court specifically held that non-material men still have the obligation to abide by the Lucy Schultz case. That requires a party, if they have reasonable diligence, can determine what the scope of the contract says and whether there is a no lien provision within the record, then they must go forth with the diligence required. Here, we know that that's possible. Not only do we know that they received and had a copy of the charter agreement, but they also admitted that they read it. He simply admitted that he just didn't read the whole thing. And we went one step further, Judge. During trial, we specifically asked Lim's manager, if you had read the whole thing, would you agree that you would have found the no lien provision? And the response was yes. Yes. That is a violation of Cardinal Shipping, which is the controlling precedent here. They're not a material man. They do not specifically are excluded from the notice requirements that this court has consistently held. That case still stands in this circuit. And specifically, most of the cases that are actually cited by Lim in opposition to our brief concern not charter operators like Lim. They deal with bunker providers. The actual material men that the 1971 amendments, they were consistently protected under the house revisions and the reports that are cited within Cardinal Shipping. So Your Honor, we submit that there is a notice issue here. Specifically, they have no valid lien because they had actual notice and they had the obligation to conduct reasonable diligence. I'll quickly turn to the second portion of my argument, that no necessaries were specifically provided to the vessels. The services that Lim was allegedly rendering was to effectuate a business model of work cat, not of trailer bridge, not of the barges. They were not providing things to the barges. They were providing a service to work cat. And I think that's evidenced by the record and it shows as a whole that all of the invoices were submitted only to work cat. The captains that Lim's captain specifically testified, I didn't work for a trailer bridge. I didn't work for the barges. I worked for work cat. I was working for work cat. Well, Mr. Cain, their response to that is that if you are correct, the whole business of maritime necessities liens, it becomes irrelevant because you ordinarily have a charter of vessels who are running the vessels for their own purpose and they order the necessaries. Right, but in this specific scenario, Your Honor, there is a time charter. This is not a bare boat charter. This is not an owner pro hoc vice. Trailer bridge did not turn over these barges lock, stock and barrel, which is the requirement to be considered a pro hoc vice owner. There was no such status. And in fact, they had read that the charter agreement specifically was a time charter. So they knew that this wasn't a bare boat charter. They were not an authorized owner or they were not authorized by the owner or authorized party by the owner to incur these maritime liens. Next, Your Honor, I specifically would like to touch on just quickly is that the scope of the claim of lien here was insufficient in the record for the district court to grant the judgment that it did. Specifically, the claims of lien that were asserted here were based on the day rate of the invoice values. If we look at the specific invoices at issue here, they're almost blank. They simply have dates, alleged work as directed, and then they have the two limb tugs issued to work at. It doesn't even have the barges that they allegedly towed or did specific services for. That is a glaring issue here, Your Honor. And specific, we have to look at their complaint. Their complaint says, I have a claim of lien for towage. It doesn't have it for day rate. It doesn't have it for time sitting idly by, waiting on loading, and waiting on a vessel to be transitioned in port and any things.  And we provided this court's definition of what towage is. It's the movement of one vessel by another through typically propulsion. And so if they are to be granted a claim of lien for towage, which we dispute, it should be at least resigned to the specific time under towage. But that's not what the district court did here. The district court accepted the wholesale day rate, the contractual day rate between limb and work cat. That was the benefit work cat incurred for an agreed upon value to have the ability to have that vessel do activities for it. It didn't have, it wasn't a representation of what the vessel's value claim against the barges was because its maritime lien is limited to the specific time under alleged towage. And so that is that does this, does this issue pertain only to the distinction between day rate and standby? No, Your Honor. I think it's, what does it go to? And I apologize if my brief wasn't clear. And by standby, I meant time not spent under towage. Whether that, I understand that.  But I mean, does your argument here about the day rate include any other supposedly excessive costs besides towage? Yes, Your Honor. Leaving aside fuel for the moment. Yes, Your Honor. And specifically, I think that the day rate does include things that are not considered towage. And that goes to the issue of, is the specific scope of the lien actually get provided by the district court just towage? Or is it other things? And it also fails on a reasonable standard because the district court failed to establish the reasonableness of the rate that was requested. Thank you, Your Honor. Thank you, sir. I'll hear first from Mr. Sharpe. May it please the court. Good morning, Your Honors. I'm David Sharpe. I'll be arguing for Lim and its capacity as the appellee. So I'll be arguing for affirmance of the district judge's decision in two respects. One is that the district judge correctly held that Lim had maritime liens for towage. That's reviewed de novo, although the underlying elements are reviewed for clear error. There was no error in finding the maritime lien. The district judge also found as fact that Lim did not have actual knowledge. I can go into that. That's reviewed for clear error as well. And then if time permits in my short eight minutes, I'll also address the reasonableness of the expenses for towage. My colleague, Avery Otan, has reserved 12 minutes to argue for Lim as cross-appellant. So the issues of was the district court wrong in excluding fuel and lube from the amount of the lien, Ms. Otan will deal with that, as well as the statute. Well, because you've already used up 20% of your time. So cutting to the chase of what interests me in particular is this notice question. And it's very hard for me to see offhand how the district court did not commit clear error in saying that you had no notice of the no lien provision. Yes, Your Honor. I mean, the facts reflect that there was a timely email that included a complete copy of the contract. And you can't just say, as the district court said, well, he didn't read it. Well, actually, Judge, with respect, I think we can say that. And we are saying that. Let me distinguish this case from what I think would be Trailer Bridge's best case on actual notice. And that's the Japan Rainbow 2. So Japan Rainbow is where this court said, yes, we affirm a district judge's finding of actual notice because the owner sent a fax that screamed notice of no lien clause. It was a two-page fax. And it had both the notice on page one and a letter on page two. Those are in the unreported district court's decision. And that was held to be sufficient notice of the no lien clause. But what's different about this case, almost everything. Kind of the who, what, when, why, where, and how. So who sent the lien notice in the Japan Rainbow? The owner sent it to the agent. Here, the charter party was sent by the charterer. Why? The lien notice in Japan Rainbow clearly sent to put suppliers on notice of the no lien clause. It practically screamed off the fax machine. In this case, why? It's not as if you're a bunker supplier. You're a charterer also, your client, a very sophisticated one, and with exactly the same clause in your own contract. So again, if I'm a homeowner with an insurance policy, unsophisticated though I may be, I'm held to the policy. And I don't understand why a sophisticated person in the business of being a charter, albeit a potential lien-or, isn't held to the same standard. Yes, and Judge, another important distinction is that WorkCat sent the entire charter party to LIM to answer a very specific question, which LIM answered. Do I have to pay in advance? It was a payment term question that was answerable by part one of the contract, but both parts were sent. So he had no, Mr. Roberts had no occasion to drill through the entire contract. He wasn't asked to. So the standard is actual notice. Professor Schoenbaum summarized the case law in saying it's kind of got to be brought home to the supplier, and it simply wasn't in this case. So the intention, I think, matters too. And then, of course, the how was the notice sent? Here, the transmittal from the charterer, from Mr. Raley, didn't say anything in the email. You'll see it from the record on appeal. It's just an empty email with the attachment, whereas in the Japan Rainbow case, it said quite clearly on the fax, in this two-page fax, please. But you say, but part of your argument in the alternative is you were relying on the credit of the vessel. So are you saying that every owner of barges has to notify every potential supplier of necessaries to every charterer of those barges? Is that what you're saying? That's correct. If the owner wants to protect itself from the no lien clause, the case law in this circuit and other circuits is clear. Actual notice brought to the attention of the supplier prior, as you pointed out in your questions to Counsel for Trailer Bridge, prior to LIM entering into its contract. And here, Although, of course, would it have made any difference to LIM whatsoever that there was no lien clause in service to WorkCat, the same as you have in your charters? Yeah, that's of no moment. Judge, there are two different kinds of charters. Ours was a time charter for powered tugboats. The barge charter that LIM was not a party to is a very different beast. They do contain similar, if not identical, no lien clauses. But Mr. Roberts testified in trial on directed verse that he didn't understand what that wording meant anyway. And so he never had actual knowledge. It wasn't brought home to him. And he had no duty to read the entire contract when it was sent to him for one purpose. He doesn't have to know all possible other solutions in the contract. That's why there's no actual notice. That would be constructive notice. And Congress did away with that with the 1971 amendments. Then what do you do with the Cardinal case? The Cardinal case is completely irrelevant. It's helpful, but irrelevant. Cardinal did not involve a lien for necessaries. Cardinal involved a chain of charter parties. And the question was, well, should a sub-charter have a duty to kind of look up the charter chain and examine the contract? And the court said, yeah, there's a reasonable duty. I'm sorry. I'm out of time. Should I finish? Finish your sentence. Thank you. Thank you, Your Honor. Yeah, so this court said properly, well, wait a minute. This isn't governed by the Maritime Lien Act. These aren't necessaries. These aren't affected by the 1971 amendments. This is a different kind of lien. It's a breach of contract lien, not a necessary. Well, what would be? Well, can you point to a single case? And this indicates I'm just making an inquiry. To me, this is more like a chain of charter agreements, given the relationship of the tug to the barges and the fact that WorkCat had to charter both of them. It seems much more analogous to the situation in Cardinal than, again, the supplier bunker fuel or batteries or something. Sure. May I respond? Is there any case? Can you cite any case that involves this precise fact scenario? Well, the Japan Rainbow is pretty close, although, as I've already said, it's distinguishable. But I don't think this case involves a charter chain in the way that the case law, like Cardinal Shipping talks about. That chain starts with an owner, goes to an intermediate charterer, and so on and so forth. And you correctly kind of call that a chain. This one is much more like what I think is our best case. Judge Stewart was on the panel in that one, and I was one of the counsel arguing way back when. And that's the Trico Shipping versus the Falrig 18. There, there was a common customer that entered into a charter for the drilling rig, which was held to be a vessel, and a separate charter for the supply boats. Charterer went bankrupt, just as WorkCat did here. And then there was a question of the liens. And this court affirmed the summary judgment, saying that, yeah, there's a lien for necessaries provided by one vessel to another, and standby is included. Thank you, Your Honors. Any additional questions, Judge Jones? Any additional questions, Judge Jones? Well, I'd say he didn't get to his third point. So if you want to give him a minute or two on his third point, that would be fair. Yeah, sure. Go for it. Sure. Thank you. The reasonableness of the damages insofar as the district judge awarded them. As you'll hear from my colleague, the amount that is compensable under a maritime lien for necessaries is the fair value of those services. So the invoices are relevant. They are an indicia of the fair value, but they're not controlling. Here, WorkCat and LIM had agreed to a day rate. It was a low rate for LIM. It was negotiated. It was undercutting a competitor. And it was a long-term contract, so LIM, even though it was not making much money on it, they figured it might be profitable over the two-year term. And so the judge said, OK, I've heard evidence that there was towage, the use of one vessel to move another, as Counsel for Traylor Bridge said. There was standby. What happened during standby? Well, the tug was made up to the hip of the barge, waiting in port for loading to be done, so it could turn around and go back across the gulf to the other port. And so the judge said, well, I've seen evidence that it was a negotiated rate. It was reasonable. I'm going to award that. And that was proper. As Ms. O'Tan will point out as cross-appellant, what was improper was the judge said, I'm not including fuel and lube. We say, but that's part of the reasonable value of our services. It's not a separate lien. It's part of LIM's lien. Thank you, Your Honors. I'll answer any questions to the best of my ability. All right. Thank you, sir. I believe we have yours. Thank you. All right. All right, Counsel. Thank you. Good morning. I'm Avery O'Tan, Counsel for Appellee and Cross-Appellant Louisiana International Marine. As my colleague just explained, the court correctly held that LIM was entitled to its maritime lien for towage. Where the court erred was in determining LIM's award. First, the court declined to award LIM its fuel and lube cost based on the application of an incorrect legal framework. Second, the court rescinded LIM's attorney's fees award because it misconstrued the claims in this case. As to the first issue, fuel and lube, the towage contract breaks LIM's cost into two components, a day rate and the cost of fuel and lube consumed. The district court correctly awarded LIM the day rate, but then erred in declining to award LIM its fuel and lube cost. The district court concluded that the barges did not require or consume the fuel or lube themselves, so LIM could not recover those costs as necessaries. But this conclusion applies the incorrect legal framework. LIM was not claiming the cost of fuel and lube as necessaries or asserting a standalone maritime lien for those fuel costs. Instead, LIM sought the cost of fuel and lube as a component of its own towage services. This court has defined towage as the supplying of power by a vessel to tow or draw another. There's no question here that the fuel and lube were required to tow the barges in this case, Trailer Bridge's own corporate representative testified at trial that the barges could not have been towed without the fuel provided to the tugs. Are you arguing for a separate fuel lien, or are you arguing that fuel is simply part of the value of towage? The latter, Your Honor. The value of the services here were the day rate, which is essentially a fixed rate applied, and then because this was a six-month contract, there's also fuel and lube, and you don't know what the fuel and lube costs are going to be during the course of this voyage. And so the fuel and lube costs were added on as part of it. I just wonder, what's the limiting principle? I mean, if tug fuel counts, then do tug crew wages count? Does maintenance count? Does insurance count? In this case, I would say crew wages do because you can't tow a barge without crew present. And in this case, that's obviously lumped into the day rate itself. But in this instance, you can't tow a barge without fuel. You can't pull it without fuel. And so that's why that should have been included in the reasonable value of towage services. But you can't enter into a contract for a tug to move without the tug fueling itself, right? Yes, that's right. I don't understand. How much was the day rate here? It was backloaded, as Mr. Sharp explained. But it was, I want to say, in the 3,000 range, but I could be mistaken. It was a per day rate. You're saying that had where in your contract with, was that a separate charge item in your contract with WorkCat? Correct, yes. The contract with WorkCat explained that LIM's cost were calculated as a day rate plus fuel and lube consumed. And the court only awarded LIM the first part and not the second part. And the record here shows that LIM ultimately paid all of these costs. On a few occasions, LIM would purchase these items and then directly invoice WorkCat. But usually, the bunkering service provider, Glander, would provide the fuel and lube and then invoice WorkCat. But after, obviously, WorkCat went bankrupt, Glander went unpaid and then filed maritime liens against LIM. And LIM paid those costs. So the record shows that LIM did pay all of these costs as part of its towage services. And because of that, LIM was entitled to recover those costs. Accordingly, LIM asked that the court reverse the judgment to the extent it declined to award LIM these costs as part of its towage services and instead instruct the court to award those costs. And the second issue, the district court also erred in rescinding its award of attorney's fees and costs to LIM. The lien act permits a party to bring an in personam action to declare a lien invalid and permits the court to award attorney's fees and costs to the prevailing party unless the court finds that the position of the other party was substantially justified or that other circumstances made an award of attorney's fees unjust. Let me ask you this, not very scientific, but both sides are unsatisfied with what Judge Brown did to some degree or another. Counselor, I absolutely want a complete do over. You want to hold on to parts of this, but then you've got two points that you either want us to plenarily correct it or send it back down. Why shouldn't the shortest distance between two points be a straight line? Ergo, send you all back down there and give you a do over rather than us wrestling with, not that I'm abandoning my job, but just saying, both sides of you say Judge Brown, he says that you got it totally wrong. The other side says, this part's good, but you've got two very discreet points here. You're leaning in pretty hard on doing it. So I ask it not whimsically, but frankly, quite practically. Instead of us trying to ferret out very discreetly these lines of what to send back or where to reverse or affirming it all, why wouldn't going back down be appropriate to both sides without us putting a thumb on it? You follow me? Yes, I follow. Well, and our argument is that the court did not err in her findings of fact. She only erred in some conclusions of law and awarding Lim what it was owed for the maritime liens. Well, that's a big only. Well, it was only two parts of the award. She did award the day rates and standby time and parts that were testified to at trial. She just did not award the fuel and lube cost, as that was a component of its towage services, and then also the attorney fee award as Lim had prevailed at trial. Well, there's no presumption in my question that we're going to do that, but I just thought while we have you here, we might as well find out. You know, counsel over there, he'd be happy to take that. So in this case, Trailer Bridge brought this action and Lim prevailed at trial. As the prevailing party to Trailer Bridge's own declaratory judgment action, Lim was originally awarded its attorney's fees and cost. In fact, the court expressly found no circumstances that would make an award of attorney's fees unjust in this case. In the original judgment, the district court granted Lim its maritime liens and REM against the barges, and then also awarded attorney's fees and cost, but did not specify whether those items were against Trailer Bridge in personam or also against the barges in REM. Has our court, have we ever reversed a denial of fees under this provision? Not in this scenario, I don't believe. But I believe that because the standard of review for conclusions of law are for clear error, I think in, sorry, for de novo, that the court should still overrule her declining of the attorney's fees because the only reason she declined or the only reason she rescinded attorney's fees was because she misconstrued what claim Lim had prevailed on. So in this case, Lim was brought in as a defendant to Trailer Bridge's declaratory judgment action. Trailer Bridge brought this action on behalf of itself, not on behalf of its barges. Lim then brought in the barges through a third party claim, saying, no, our liens are valid. And so at trial, the court determined that, yes, the liens were valid. Therefore, Lim both prevailed on its third party claim against the barges to render the liens valid, but it also prevailed in defending against the action brought by Trailer Bridge to render the maritime liens invalid. And so that's why Lim brought, that's why Lim seeks his attorney's fees in this case. Let me bother, let me ask you again, Ms. O'Tan. What was your, what exactly was your response to Judge Willett's question about the fuel and lube? In other words, you're saying the towage, you're saying it's part of being necessary for towage. And again, and as Judge Willett asked, why isn't maintenance of the tug, say the tug breaks down halfway during the tow, are you going to, would a tugboat owner have the right to claim that a repair during the course of the tow was part of the cost of towage? I don't believe so, Your Honor, because that is an extenuating circumstance that the tug may have been in a bad shape or whatnot. It's still necessary. It's still necessary to get the barge from point A to point B. So where are you drawing the line with fuel and lube as opposed to every other operating cost of a tugboat? Well, because in this instance, you cannot tow a barge at all without fuel and lube. They could not power the vessel. You can't tow it if it doesn't have the proper lights on it, according to the Coast Guard regulations. You can't tow it if you don't have appropriate communication systems and GPS and so on. Do you have any case that breaks down separate towage costs in the way that you're asking us to do? No, Your Honor, I cannot point to a case that has ruled either way. However, I believe that the towage contract can be used to show the reasonable value of LIMS services. And in this case, LIMS towage services were defined as both the day rate and the reasonable cost of fuel and lube costs. That's all you've got, is you're saying we rely on the contract. And somehow, that's more important than any existing authority about the interpretation of necessaries under maritime law. Yes, Your Honor. However, at trial, there was no contrary evidence submitted to show that these costs were not reasonable or that LIM should not have incurred these fees. Instead, the court found that these rates were reasonable and that LIM had shown that the reasonable rates were provided in towing the barges. And so therefore, LIM asked that the court would vacate the amended judgment and reinstate the original judgment to the extent that it awarded LIM its attorney's fees and costs, and also instruct the district court to clarify that that award of attorney's fees and costs is actually in personam against Trailer Bridge. And then we'd also ask that the court quantify LIM's costs and attorney's fees, including through this appeal. Thank you, Your Honor. All right, thank you, ma'am. All right, back to you, Mr. Keene. Over to Butler.  Your Honors, I'll briefly address the cross appeal issues first. Specifically, it relates to the fuel and lube. That issue was actually decided on summary judgment, and it was re-raised by LIM at trial, even though the parties had objected in the pretrial order. And I think the court even recognized that that issue had really been dispensed with. But it said, sure, we can talk about it again. But I think this court is honing in on the specific issues correctly, and that the exact examples that I was going to propose to you, Judge Willett, and to Judge Jones, you said it first. It's like semen wages. Is that the component part? Are we talking about every line and rope and light bulb that's on the vessel? These aren't component parts of this discrete task for towage that is subject of the claims at issues. They're claiming a towage, and they're saying that the day rate is representative of that. Oh, but then we want you to also pay the contractual charter party plus amount for fuel and lube. But this isn't a breach of charter case. We don't have that. This is a statutory maritime lien claim that has been asserted for towage and towage alone. If fuel can't to be included, is that because it was separately itemized? I mean, would your position change if it had been bundled into the day rate? No, Your Honor, because the alleged supply of that fuel and lube was not to the barges. It was supplied to a tug. And that's a standalone element of the Federal Maritime Lien Act. So are you essentially asking us to hold that operating costs that are embedded in a service contract can never be reflected in the value of a maritime lien? No, Your Honor. Specifically, what I'm saying is that the court did not have sufficient evidence before it to determine what the reasonable value of towage was. And the specific discrete act of towage, of moving a vessel from one point to another, that was towage. And that's the issue, is because a day rate was provided, not the value and the reasonableness of that value for the claim of towage. And so that's the real disconnect here. And I really think that there is insufficient evidence in the record to support that award. And the district court acknowledged that. But I specifically would like also to turn to, quickly, the attorney's fee provision. What Lim has just requested of this court is for it to reinstate the original judgment, which provides an award of attorney's fees, but a manifest error awarding attorney's fees against a barge, which we know the Bradford Marine case tells us you can't do. And so the district court was correcting an error of law. And so it correctly held that attorney's fees were not warranted and did not abuse its discretion, which was completely within its authority, given the statutory language that attorney's fees may be awarded. So, Your Honors, I'll turn back to the principal arguments on appeal. Specifically notice, Mr. Sharpe brought up specifically that it seemed to matter who sent the charter agreement. It doesn't matter who sent the charter agreement. It could have been the agent that sent the charter agreement. But the thing is that the law says, do you have notice, or did you have the reasonable diligence standard imposed upon you by the cardinal shipping case to conduct reasonable diligence that would easily have discovered the no lien provision? Both we have affirmative answers there. And so we don't even need to get to a remand, Judge Stewart, specifically. The straightest line here, the straightest line is a judgment in favor of the barges and trailer bridge that they did not have a valid maritime lien. We don't have to read that. I think it's, isn't it significant that Cardinal was, in fact, couched in terms of a chain of charter agreements? And how does your situation conform to that and compare that, perhaps, with the Trico case? Your Honor, specifically the cardinal shipping case provided an illustrative example that subcharters are similar to that. But specifically, the language used by this court, it said that the amendments certainly affected the power of the material men to acquire a maritime lien, but it had no effect as to other charters. And this is the cardinal shipping case. I believe it is on page 470 of that case. And that's specific in its, yes, Your Honor? It's always significant to me when Judge Rubin was on the panel. Exactly. And I apologize. There was an error in my brief that I noted that the drafter of the opinion was Judge Rubin, and it was not. But he simply sat on the panel and affirmed the ruling of it. And I think it's important, again, that this court did not couch specifically that it was just subcharters. It's simply to all charters still have the diligence standard but for material men. Thank you for your time, Your Honors. All right. Thank you, counsel. Both sides, the case will be submitted. Parties in the last case, you can come on up.